PATRICIA RIVET MURRAY, Judge.
|, This is a suit arising out of an agreement to purchase property. The buyer, Kenneth Saavedra, brought this suit against the seller, Jerry Wallace, and seven other defendants. In response, Mr. Wallace and five of the other defendants (hereinafter referred to as the “Wallace Defendants”)[1] filed exceptions of prematurity and lack of subject matter jurisdiction based on an arbitration provision contained in the purchase agreement. From the trial court’s judgment denying the exceptions, the Wallace Defendants appeal. For the reasons that follow, we convert the appeal to an application for supervisory writ, reverse the trial court’s ruling denying the exception of prematurity, affirm the trial court’s ruling denying the exception of lack of subject matter jurisdiction, and remand.
FACTUAL AND PROCEDURAL BACKGROUND
On January 2, 2006, Mr. Saavedra, a Louisiana resident, and Mr. Wallace, a Florida resident, entered into a purchase agreement to transfer title to property located in Texas. The property was part of a planned subdivision that Mr. Wallace |2was developing. Pursuant to that agreement, Mr. Saavedra agreed to pay Mr. Wallace $55,000 for the property. Although Mr. Saavedra paid the purchase price, Mr. Wallace never transferred title to the property to him because development of the planned subdivision became impracticable. According to the petition, in a document dated December 18, 2006, executed by Rodney Bell, President of Jerry Wallace Developments, L.L.L.P., one of the named defendants, the defendants promised that a planned bungalow in Georgia would be sold and that the proceeds would be used to compensate Mr. Saavedra for the funds owed to him. The petition further alleges that no funds were received from the promised Georgia sale and that on March 9, 2007, Mr. Saavedra executed a refund request seeking a refund of his $55,000 purchase price. Despite amicable demand, Mr. Wallace failed to refund the purchase price to Mr. Saave-dra.
On October 4, 2007, Mr. Saavedra filed this suit against, among others, the Wallace Defendants.[2] In his petition, Mr. Saavedra asserted the following five causes of action: breach of contract for failure of cause, fraud, intentional misrepresentation, conversion, and violation of Louisiana Unfair Trade Practices Act.
In response, the Wallace Defendants filed exceptions of prematurity, lack of subject matter jurisdiction, vagueness, and no cause of action.[3] The exceptions of prematurity and lack of subject matter jurisdiction were based on an arbitration provision contained in the January 2, 2006 purchase agreement, which provided:
| ^Arbitration: In the event a dispute or an issue of any nature develops between Buyer and Seller, Buyer shall give Seller written notice of the dispute or issue *761 and Seller shall then have 180 days to resolve the matter if it can be resolved. If Buyer is not content with the outcome after this 180 day period then the Buyer must submit any and all claims, issues or disputes of any nature arising out of this contract in anyway, to include claims under tort law, contract law, statutory law, or common law to binding in [ (sic) ] arbitration with Texas Arbitration and Mediation Services of El Paso, Texas, and shall waive any and all rights to trial by jury or judge.
Although the trial court initially sustained the exceptions and dismissed the suit, it granted Mr. Saavedra’s motion for new trial and set the Wallace Defendants’ exceptions for rehearing. On rehearing, the trial court overruled the exceptions. The instant appeal followed.
APPELLATE JURISDICTION
The initial issue we must address is whether this court has jurisdiction to decide this appeal from the trial court’s ruling denying the exceptions of prematurity and lack of subject matter jurisdiction based on the arbitration provision. This issue turns on whether the trial court’s judgment overruling these exceptions is an appealable judgment. The trial court’s ruling denying these exceptions is an interlocutory judgment because it “does not determine the merits but only preliminary matters in the course of the action.” La. C.C.P. art. 1841. Louisiana Code of Civil Procedure Article 2088 governs the ap-pealability of interlocutory judgments.
Article 2083 was amended by Act 205 of 2005 (effective January 1, 2006) to delete the provision allowing an appeal “from an interlocutory judgment which may cause irreparable injury.” As amended, Article 2083 now provides that “[a]n interlocutory judgment is appealable only when expressly provided by law.” La. C.C.P. art. 2083(C). Before the amendment, the jurisprudence held that a | ¿judgment denying arbitration was an interlocutory judgment that could cause irreparable harm and thus was immediately appealable. The courts and the commentators have construed the amendment to Article 2083 as abrogating the prior jurisprudence and requiring that such ruling be reviewed by supervisory writ. Arkel Constructors, Inc. v. Duplantier & Meric, Architects, L.L.C., 06-1950, 06-1951, p. 6 (La.App. 1 Cir. 7/25/07), 965 So.2d 455, 459 (holding that “the amendment to LSA-C.C.P. art. 2083 now prohibits an immediate appeal from a motion denying a request for arbitration, despite any contrary indications in the jurisprudence”); Anthony M. DiLeo, The Enforceability of Contractual Agreements to Arbitrate: A Survey of the Last Three Years of Jurisprudence, 56 La. B.J. 174, 175 n. 6 (2008)(noting that amendment to Article 2083 superceded jurisprudence holding there was a right to an interlocutory appeal from a judgment denying arbitration). The 2005 official comments to Article 2083 state that “[t]he prior cases recognizing a right to appeal interlocutory judgments based on the irreparable injury standard set forth in the previous version of Article 2083(A) are no longer valid.” La. C.C.P. art. 2083, 2005 Official Comment (b).
Applying these principles, this court in Ganier v. Inglewood Homes, Inc., 06-0642, p. 2 (La.App. 4 Cir. 11/8/06), 944 So.2d 753, 755-56, dismissed an appeal from an interlocutory judgment denying an exception of prematurity based on an arbitration agreement and converted the appeal to an application for supervisory writs.
The Wallace Defendants contend that this case is governed by the Federal Arbitration Act (“FAA”). They further contend that the FAA, which provides in Section 16 that an order denying arbitra *762 tion may be appealed, preempts the Louisiana procedural law precluding an appeal from an order denying arbitration. | .Although we agree that the FAA governs this case, we find that the FAA does not preclude applying Louisiana procedural law regarding the right to appeal an interlocutory judgment denying arbitration.
The FAA has been construed as reflecting Congress’ intent to exercise the commerce power to the fullest extent, and the phrase “involving interstate commerce” in Section 2 of the FAA has been construed to mean “affecting” interstate commerce. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In this case, the purchase agreement entered into between Mr. Saavedra, a Louisiana resident, and Mr. Wallace, a Florida resident, to transfer property located in Texas clearly “affects” interstate commerce.
The FAA provisions governing the timing of appeals are procedural in nature, and state courts are thus free to follow their own procedural rules regarding the timing of appeals unless those rules undermine the goals and principles of the FAA. Collins v. Prudential Ins. Co. of America, 99-1423, p. 5 (La.1/19/00), 752 So.2d 825, 828-29. The Louisiana procedural rule limiting the review of an interlocutory judgment denying arbitration to a discretionary supervisory writ does not undermine the goals and principles of the FAA. See Allen v. Valero Energy Corp., 06-726, pp. 3-4 (La.App. 5 Cir. 1/9/07), 951 So.2d 370, 371-72 (rejecting argument that FAA preempted Louisiana procedural rule regarding right to immediate appeal a state court judgment).
For these reasons, we dismiss the Wallace Defendants’ appeal. Exercising our supervisory jurisdiction, we convert this appeal to an application for supervisory writs and for the reasons set forth below grant the writ application.[4]
| .ARBITRATION
On appeal, the sole assignment of error the Wallace Defendants assert is that the trial court erred by overruling their exceptions of prematurity and lack of subject matter jurisdiction seeking to compel arbitration. The proper procedure to raise the issue of a party’s failure to submit to arbitration is by filing either a dilatory exception of prematurity or a motion to stay the proceeding pending arbitration. Frank L. Maraist and Harry T. Lemmon, 1 Louisiana Civil Law Treatise: Civil Procedure, § 6.6, n. 28 (1999). In this case, the Wallace Defendants properly raised this issue by filing an exception of prematurity.
Determination as to whether to stay or to compel arbitration is a question of law. Billieson v. City of New Orleans, 02-1993, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 560. The standard of appellate review on questions of law is to determine whether the trial court was legally correct or incorrect. Id. The party pleading the exception of prematurity has the initial burden of showing the existence of a valid contract to arbitrate. Blount v. Smith Barney Shearson, Inc., 96-0207, p. 4 (La. App. 4 Cir. 2/12/97), 695 So.2d 1001, 1003.
As noted, this case is governed by the FAA. Section 2 of the FAA pro *763 vides for resolution of issues by arbitration, stating:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
|7The threshold inquiry a court must decide is whether the parties agreed to arbitrate their dispute, which is a two-fold inquiry: (1) whether there is a valid arbitration agreement, and (2) whether the dispute in question falls within the scope of that agreement. Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 03-1662, p. 9 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 388. The question of whether the parties have submitted a particular dispute to arbitration — arbitrability — is generally one for the court to decide. Howsam v. Dean Witter Reynolds, Inc., 637 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Under the FAA, any doubt concerning the scope of which disputes are arbitrable should be resolved in favor of arbitration. Moses H. Cone Me-mortal Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
It is undisputed that the January 2, 2006 purchase agreement entered into between Mr. Saavedra and Mr. Wallace contained an arbitration provision.[5] The Wallace Defendants contend that the arbitration provision at issue is a broad one and that merely because Mr. Saavedra has cast his claims as involving fraud or misrepresentation does not render the dispute inarbitra-ble. See Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 526 (5th Cir.2000)(holding that “parties to such [broad arbitration] agreements cannot avoid them by casting their claims in tort, rather than in contract.”) Mr. Saavedra counters that his claims sounding in ¡¡¡tort, including fraud in the inducement, intentional misrepresentation, and conversion lie outside the scope of the arbitration agreement. In support, Mr. Saavedra cites George Engine Co. v. Southern Shipbuilding Corp., 350 So.2d 881 (La.1977), for the proposition that an arbitration provision “do[es] not vest in arbitrators the historic jurisdiction of the courts to determine fraud or duress in the inception of a contract.” Id. at 884. He further contends that “this case is less about the quality and extent of performance (something potentially suited for arbitration), *764 but rather the circumstances surrounding the formation of the original agreement and the subsequent objective novation (something suited for the trial court).
We find, as the Wallace Defendants contend, that the arbitration provision at issue is a broad one. See Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752 (5th Cir.1993)(distinguishing between narrow and broad arbitration provisions). The arbitration provision covers “any and all claims, issues or disputes of any nature arising out of this contract in anyway, to include claims under tort law, contract law, statutory law, or common law.” When, as in this case, the contract contains a broad arbitration provision and an allegation of invalidity of the contract due to fraud in the inducement is raised, the federal courts have invoked the separability doctrine. Larry E. Edmondson, Domlce on Commercial Arbitration § 11:1 (3rd ed. 2008){“Domlce ”). The separability doctrine, which the United States Supreme Court adopted in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), is based in on a legal fiction that the arbitration provision is an independent contract from the main contract in which it is contained. Domlce, supra. Pursuant to this doctrine, the arbitration provision is treated as severable from the main agreement in which it appears, and “the issue of fraudulent inducement of the main contract, as well as other claims made by a | iiparty to a contract containing the broad arbitration agreement, go directly to arbitration, unless it is clearly shown that the parties intended to withhold such an issue from the arbitrator.” Domlce, supra.
The Louisiana Supreme Court in George Engine, supra, rejected the separability doctrine. In so doing, the court expressly recognized that it was departing from the Prima Paint case in determining a state law issue.[6] Because this case is governed by the FAA, Mr. Saavedra’s reliance on the George Engine case is misplaced.
In two recent decisions, Preston v. Ferrer, — U.S. -, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) and Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the United States Supreme Court clarified and reaffirmed its holding in Pri-ma Paint. It is now well-settled that as a matter of substantive federal law applicable also to the states: (i) an arbitration clause is severable from the remainder of the contract, and (ii) unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is decided by the arbitrator.[7] Applying these principles to *765 the instant case, which is governed by the FAA, we note that Mr. Saavedra’s fraud claim is directed to the purchase agreement as a whole; he is not attacking the arbitration provision itself. We thus find that Mr. Saavedra’s claims, including the claim of fraud in the inducement, must be arbitrated.
|inIn opposing the exception of prematurity, Mr. Saavedra also contended that the arbitration provision in the January 2, 2006 purchase agreement was not enforceable because the December 18, 2006 document executed by Mr. Bell,[8] which was referenced in the petition, constituted a novation of the earlier agreement. Mr. Saavedra points out that the December 18, 2006 document contained no arbitration provision and expressly provided that it “represents the entire agreement between the two parties and supersedes the Wallacetown agreement and all others.” He thus contends the subsequent agreement was a true novation. In support, he cites the Civil Code articles on novation, which provide as follows:
• Novation is the extinguishment of an existing obligation by the substitution of a new one. La. C.C. art. 1879.
• The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed. La. C.C. art. 1880.
• Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no no-vation. La. C.C. art. 1881.
• Novation takes place also when the parties expressly declare their intention to novate an obligation. Id.
• Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification. Id.
The Wallace Defendants counter that the December 18, 2006 document was not a novation. They point out that Mr. Saave-dra’s allegations in his petition are based on the original purchase agreement and establish his lack of intent to novate | „the purchase agreement. Indeed, they further point out that Mr. Saavedra’s evidence of a purported modification of the purchase agreement is a document that was not signed by either of the parties to the original agreement — Mr. Wallace or Mr. Saavedra.
Mr. Saavedra alleged in his petition that the December 18, 2006 document “contained language unilaterally claiming that it represented the entire agreement between the two parties.” A unilateral understanding, by definition, is not an agreement and thus cannot be a novation — an agreement to extinguish an earlier obligation. Mr. Saavedra’s allegations in his petition, as the Wallace Defendants point out, are based on the original purchase agreement and refute his argument that he intended to extinguish that agreement. Indeed, the basis for Mr. Saavedra’s petition is the original purchase agreement, and the relief he seeks includes a refund of the $55,000 purchase price allegedly paid under that agreement.
*766 The January 2, 2006 purchase agreement expressly provided that “[n]o amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.” As noted, neither of the parties to the purchase agreement signed the December 18, 2006 document.
Accordingly, we find that the allegations of Mr. Saavedra’s petition and the express language of the purchase agreement belie Mr. Saavedra’s novation argument.
I, ¿CONCLUSION
For the foregoing reasons, we convert this appeal to an application for supervisory writs. We grant the application for writs, reverse the judgment of the trial court denying the exception of prematurity, affirm the judgment of the trial court denying the exception of lack of subject matter jurisdiction, and remand for further proceedings consistent with this opinion.
APPEAL CONVERTED TO WRIT; WRIT GRANTED; REMANDED WITH INSTRUCTIONS.

.The six defendants who filed these exceptions are Mr. Wallace; Jerry Wallace Developments, L.L.L.P.; Jerry Wallace Companies, L.L.L.P.; Jerry Wallace Dealmakers, L.L.C.; Wallacetown Land Company, L.L.L.P.; Jerry L. Wallace Limited Partnership; and Deal-makers Square, L.L.C. (hereinafter the "Wallace Defendants”). The two other named defendants, Dealmaker Developments, L.L.C., and Darren Zuppardo, did not join in filing the exceptions and are not parties to this appeal.

. The suit was removed to federal court, but remanded to state court due to the failure to establish either diversity of citizenship or the jurisdictional limit.

. Some of the defendants deposited $8,014 into the registry of the court as a tender.

. The Wallace Defendants filed not only a notice of appeal within the thirty day period for filing a writ application, but also a notice of intent to apply for supervisory writ. Although in addressing the writ application we employed "writ denied” language, we actually deferred acting on the writ application to this appeal. We did not, as Mr. Saavedra contends, find the writ application procedurally defective.

. Although the only parties to the purchase agreement were Mr. Saavedra and Mr. Wallace, the Wallace Defendants contend that given the relatedness of the claims collectively asserted against the defendants the arbitration agreement can be invoked by all the defendants, including the non-signatory defendants. See Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir.2000)(noting that "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.”) We agree. Indeed, we note that Mr. Saavedra similarly acknowledges in his brief to this court that he has alleged that "the multiple juridical entities formed a single business enterprise in marketing, soliciting and contracting” with him and that his argument pertaining to the novation of the purchase agreement (discussed below) applies to all the defendants. Likewise, Mr. Saavedra uses the term defendant in his petition interchangeably to refer to all the defendants. We thus find, as the Wallace Defendants contend, the arbitration agreement equally applies to all the defendants.

. Louisiana courts have recognized that the Louisiana Binding Arbitration Law, La. R.S. 9:4201-4217 ("LAL”), is virtually identical to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA”). Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 03-1662, p. 8 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 387. The issue of whether the court or the arbitrator decides the question of fraudulent inducement is an exception to the general rule that the jurisprudence has construed the LAL and the FAA in the same manner.

. In Sun Drilling Products Corp. v. Rayborn, 97-2112 (La.App. 4 Cir. 12/3/97), 703 So.2d 818, this court found that an allegation of fraud in the inducement of a contract containing an arbitration clause was to be decided by the court even when the case was governed by the FAA. In so finding, we relied on Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), as permitting a court to consider a challenge to the main contract based on a claim of fraud in the inducement. Given the United States Supreme Court’s recent holdings in 2006 and 2008 clarifying the scope of Prima Paint, we find our reliance on the Casarotto case was misplaced and conclude that a claim of fraud in the inducement is arbitrable unless the claim is directed at the arbitration provision itself.

. Although the parties dispute Mr. Bell's authority to enter into a novation, we find it unnecessary to reach that issue.