DENNIS R. BAGNERIS, SR., Judge.
| ,This is a suit arising out of a construction project involving the construction of 460 apartments in New Orleans, Louisiana. Plaintiff, Sturdy Built Homes, LLC, (“Sturdy Built”) entered into a subcontract agreement with defendant Carl E. Woodward, LLC d/b/a/ Woodward Design + Build (“CEW”) to provide labor, materials to fabricate and install wall panels, beams and floor trusses. Upon the subcontract agreement being placed in default, Sturdy Built filed suit against defendants CEW, Ed Jorgensen, Lane Louque, and Travelers Casualty & Surety Company of America seeking damages for breach of the subcontract, unjust enrichment, tortious interference with the contract, and bad faith breach of contract. Defendants filed an exception of prematurity based on an arbitration provision contained in the subcontract agreement, which the trial court granted. After review of the record in light of the applicable law and arguments of the parties, we hereby affirm the ruling of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
On December 29, 2008, CEW, as general contractor, entered into a contract with C.J. Peete I, LLC c/o McCormack Baron Salazar, Inc., as Owner, to construct the 460 new apartments at the site of the former C.J. Peete Housing Project in New Orleans. Thereafter, on March 31, 2009, CEW entered into a contract entitled “Subcontract Agreement” with Sturdy Built to provide labor, materials to fabricate and install wall panels, beams and floor trusses on the project. This Subcontract Agreement contains a “Disputes” section, which provides:
Any controversy or claim arising out of or related to this Agreement or breach thereof shall be settled as follows:
|2A. Mediation shall be tried, utilizing a mutual [sic] agreeable mediator. Cost of the mediation shall be paid in equal parts by Contractor and Subcontractor. If the dispute is not resolved within 45 days of initial request for mediation then either party may proceed to file an arbitration demand.
B. If mediation fails, then by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. By agreement of both parties, in lieu of arbitration, the parties may select the judicial process. In such event suit shall be *475 filed in State of Louisiana in the Parish in which the Project is located.
On October 28, 2009, CEW notified Sturdy Built that it was terminating the Subcontract Agreement with respect to a portion of the project, specifically Blocks G and H, “for cause.” Following an unsuccessful mediation, on August 25, 2010, CEW filed an arbitration demand with the American Arbitration Association against Sturdy Built, seeking damages as a result of Sturdy Built’s failure to properly perform. On August 26, 2010, Sturdy Built filed this lawsuit seeking damages for breach of the subcontract, unjust enrichment, tortious interference with the contract, and bad faith breach of contract.
On November 24, 2010, Defendants filed a dilatory exception of prematurity and an alternative motion to stay Sturdy Built’s claims during the pendency of arbitration between CEW and Sturdy Built, arguing that the subcontract agreement mandates that any disputes are to be resolved by arbitration. At the hearing, Sturdy Built argued that the subcontract must be read together with the overall project construction contract to permit litigation of its claims. Specifically, Sturdy Built argues that the construction contract, which was entered into by CEW and C.J. Peete I, LLC c/o McCormack Baron Salazar, Inc., provides that, “[n]o claim, dispute, or other matter in question between the parties to this agreement arising |sout of the Construction contract, or the breach thereof, shall be submitted to arbitration.”
Following a hearing, the trial court granted defendants’ exception of prematurity and provided the following well-written reasons for judgment, in pertinent part:
Although the disputes section of the Construction Contract between CEW and the Project Owner provides that no issue shall be submitted to arbitration, it states that the parties further agree that no dispute between the Owner and the Contractor may be litigated unless and until the parties have first submitted the dispute to non-binding mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. Const. Cont. at Section 4.5. Louisiana Law provides that separate agreements as part of the same transaction are to be construed together as consistently as possible. See Neal v. Hardee’s Food, 918 F.2d 84, 37, (5th Cir.1990). As such, if the court were to read the Construction Contract together with the subcontract it is clear that both the Construction Contract and the subcontract seek to avoid litigation of matters. Even so, these were separate agreements, executed by different parties, entered into at different times, for different purposes and were not part of the same transaction. Id. Holding, “Under principles of contract law, separate agreements executed contemporaneously, by the same parties, for the same purpose, and as part of the same transaction, are to be construed together.” Thus, this Court finds that Plaintiff was not a party nor a third party beneficiary to the Construction Contract and cannot use the Construction Contract to avoid the terms of the subcontract that provide for arbitration. Furthermore, Louisiana Law provides that when the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. Art. 2046. The arbitration clause contained in the subcontract agreement is clear and explicit. Sturdy Built had the opportunity to and did in fact request numerous changes to the subcontract agreement; however, they made no changes to the arbitration pro *476 vision contained therein. Plaintiff Sturdy Built did not attempt to modify or delete the Arbitration Clause contained in the subcontract even though they requested and received other changes to Uprovisions of the subcontract. Plaintiff knowingly and voluntarily entered into the arbitration agreement. As such, this Court finds that a valid arbitration agreement does exist.
After determining whether a valid arbitration agreement exist, the court must next decide whether the Plaintiffs claims fall within the scope of that agreement. The Arbitration clause contained in the subcontract provides, “any controversy or claim arising out of or related to this agreement or breach thereof shall be settled as follows.... ” See Subcontract Agreement at Section 24. This language is broad and Plaintiffs claims fall within the scope of the arbitration agreement. Louisiana courts have recognized a strong presumption in favor of arbitration and any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. Moore v. Automotive Protection Corp., 97-0623, p. 2 (La.App. 4 Cir. 5/21/97), 695 So.2d 550, 551. As such, this Court finds that the broad language of this Arbitration Clause encompasses the Plaintiffs claims.
Finally, as to the exception of Prematurity, this Court must address Plaintiffs assertion that certain parties to the litigation were non-signatories to the arbitration agreement and as such cannot be made to arbitrate their claims. Pursuant to the theory of equitable estoppel, which would permit arbitration, a non-signatory to a contract with an arbitration clause can compel arbitration when the action is intertwined with, and dependent upon, that contract. Grigson v. Creative Artist [Artists ] Agency, L.L.C., 210 F.3d 524, 528 (5th Cir.2000) cert. den., 531 U.S. 1013, 121 S.Ct. 570 [148 L.Ed.2d 488] (2000). See also, Regions Bank v. Weber, [53] So.3d [1284], 2010 WL 5121074 (La.App. 4th Cir.), 2010-1169 (La.App. 4th Cir.12/15/10). Here, given the relatedness of the claims collectively asserted against Defendants, the arbitration agreement can be invoked by all Defendants, including the non-signatory Defendants. Id. at 527. The claims against the non-signatories are intertwined with and dependent upon the subcontract, and therefore they must also be sent to arbitration.
Sturdy Built now appeals the trial court’s judgment, which granted defendants’ dilatory exception of prematurity as well as the trial court’s denial of Sturdy Built’s motions for new trial. On appeal, Sturdy Built assigns the following [.¡assignments of error: (1) the trial court erred when it failed to interpret the General Contract as “trumping” the Subcontract; (2) the trial court erred in not first determining whether the General Contract/Subcontract system could not be interpreted on its face without resorting to secondary methods of interpretation; (3) the trial court erred when it found the alleged arbitration agreement extended to non-party Jorgensen; and (4) the trial court erred when it found that Sturdy Built’s verified allegations of intentional torts against Jorgensen are subject to the alleged arbitration agreement.
DISCUSSION
The determination as to whether to stay proceedings or to compel arbitration is a question of law. Saavedra v. Dealmaker Developments, LLC, 08-1239, p. 6 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762. The standard of appellate review on questions of law is to determine whether the trial court was legally correct or incor *477 rect. Id. The threshold inquiry a court must decide is whether the parties agreed to arbitrate their dispute, which is a twofold inquiry: (1) whether there is a valid arbitration agreement, and (2) whether the dispute in question falls within the scope of that agreement. Id. at p. 7, 8 So.3d at 763 citing Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 03-1662, p. 9 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 388. The question of whether the parties have submitted a particular dispute to arbitration — arbitrability—is generally one for the court to decide and, under the FAA, any doubt concerning the scope of which disputes are arbitrable should be resolved in favor of arbitration. Id.
The Louisiana statutory provisions for arbitration include La. R.S. 9:4201, which states:
IfiA provision in any -written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La. R.S. 9:4202 provides:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance -with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
In this case, Section 24 of the Subcontract Agreement between CEW and Sturdy Built clearly and unambiguously requires mediation and then arbitration of all disputes between CEW and Sturdy Built. As previously noted, Section 24 states:
Any controversy or claim arising out of or related to this Agreement or breach thereof shall be settled as follows:
A. Mediation shall be tried, utilizing a mutual [sic] agreeable mediator. Cost of the mediation shall be paid in equal parts by Contractor and Subcontractor. If the dispute is not resolved within 45 days of initial request for mediation then either party may proceed to file an arbitration demand.
B. If mediation fails, then by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. By agreement of both parties, in lieu of arbitration, the parties may select the judicial process. In such event suit shall be filed in State of Louisiana in the Parish in which the Project is located.
|7We, like the trial court, find no merit in Sturdy Built’s argument that the subcontract must be read together with the overall project construction contract. Not only was the overall project construction contract a separate agreement, executed by different parties, but Sturdy Built was neither a party nor a third party beneficiary to that contract. Under the clear language of the subcontract and under applicable Louisiana law, the trial court correctly ruled that Sturdy Built and CEW must proceed to arbitration.
The next issue to address is whether the trial court correctly ruled that Sturdy Built’s claims are subject to arbitration. On appeal, Sturdy Built claims that defendant Jorgensen cannot be compelled to
*478 arbitrate since he was not a party to the arbitration agreement and because its claims against him are based in tort. Sturdy Built cites to an Alabama Supreme Court case, Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.1998) for the proposition that arbitration agreements between companies, no matter how broad, cannot be construed so broadly as to encompass intentional torts; however, as defendants correctly point out, this case is not binding on this Court and there is a substantial body of law holding otherwise.
Specifically, defendants cite to a Fifth Circuit case, Grigson v. Creative Artists Agency, LLC, for the proposition that a non-signatory to a contract with an arbitration clause can be compelled to arbitrate under an equitable estoppel theory, including when the action is intertwined with, and dependent upon, that contract. 210 F.3d 524 (5th Cir.2000). In Grigson, the issue is whether the trial court had abused its discretion by applying the doctrine of equitable estoppel to compel the arbitration of an action centered on a claim of tortious interference with a contract, where the contract contained an arbitration clause. The action was brought by signatories to the contract against non-signatories. The Fifth Circuit affirmed the | ¿trial court’s ruling and held “because this action is intertwined with, and dependent upon, that contract, its arbitration agreement should be given effect.” Grigson, 210 F.3d at 525. This Court has also applied the doctrine of equitable estoppel to compel a non-signatory defendant to an arbitration agreement to arbitrate with a signatory plaintiff. See Regions Bank v. Weber, 2010-1169, p. 11 (La.App. 4 Cir. 12/15/2010), 53 So.3d 1284, 1291. As stated in Grigson, “[t]he linchpin for equitable estoppel is equity-fairness. For the case at hand, to not apply this intertwined-claim basis to compel arbitration would fly in the face of fairness.” 210 F.3d at 528. We, like the Court in Grigson, do not And that the trial court abused its discretion in applying the equitable estoppel doctrine to find that the claims against defendants are so intertwined with and dependent upon the subcontract that they must be sent to arbitration as well.
Accordingly, we hereby affirm the judgment of the trial court.
AFFIRMED